UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN H. WHITE,

                                        Plaintiff,

              v.                                                    9:14-CV-0002
                                                                    (GLS/RFT)

PAUL GOKEY, et al.,

                                        Defendants.
_____

APPEARANCES:

JOHN H. WHITE
08-A-3366
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

GARY L. SHARPE
Chief United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

         Presently pending before the Court is a pro se civil rights complaint filed by plaintiff

John H. White pursuant to 42 U.S.C. § 1983 ("Section 1983").[1]  Dkt. No. 1 ("Compl.").

Plaintiff, who is currently incarcerated at Upstate Correctional Facility ("Upstate C.F."), has

not paid the filing fee.  Plaintiff has submitted an application to proceed with this action in

forma pauperis.  Dkt. No. 2 ("IFP Application").

_____

[1]  Plaintiff has four other actions pending in this District.  *See White v. Clark*, No. 9:12-CV-0986
(NAM/RFT); *White v. Williams*, No. 9:12-CV-1775 (NAM/RFT); *White v. Williams*, No. 9:12-CV-1892 (GLS/ATB);
and *White v. Beilein*, No. 9:13-CV-0392 (GTS/CFH).

## II.    DISCUSSION

### A.    IFP Application

Upon review, the Court finds that plaintiff has submitted a completed, signed and certified IFP Application which demonstrates economic need.  *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District.  Dkt. No. 3. Accordingly, plaintiff's IFP Application (Dkt. No. 2) is granted.

### B.    Initial Screening

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Therefore, the Court must determine whether plaintiff may properly maintain his complaint before permitting him to proceed.  Although a court has the duty to show liberality towards *pro se* litigants, see *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), a court also has the responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.  "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer*, No. 9:07-CV-1241 (TJM/RFT), 2008 WL 268215, at *1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as

2

well as "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Id.* at 325.

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure.  Rule 8 provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a

3

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

### C.    Review of Plaintiff's Complaint

Plaintiff was verbally threatened and harassed by defendants Gokey (Compl. at 3, 9), Menard (*id.* at 5), Dishaw (*id*. at 5, 11), Pickering (*id.* at 8), Howard (*id.* at 10), Uhler (*id.* at 11), and Williams (*id.* at 11).  Defendant Hungerford was present when defendants Gokey and Dishaw threatened plaintiff on November 27, 2013, and December 11, 2013, respectively.  *Id.* at 3, 5.

On December 11, 2013, while plaintiff rested his face against the bottom of his cell door, defendant Dishaw kicked the door with extreme force, injuring plaintiff's nose, the right side of his skull, and his mouth.  *Id*. at 5-6.  The bleeding and swelling from this assault lasted for several days and the pain "continues . . . to date." *Id.* at 6-7.  When plaintiff asked to be seen by the medical department, Dishaw walked away.  *Id.*  The next day, nurses Lordi and Ward failed to provide plaintiff with medical care for his injuries.[2]  *Id.*

On June 24, 2013, correctional officer Lipka threw plaintiff's outgoing mail in the garbage.  *Id.* at 10.  On July 23, 2013, and defendant Dishaw "attempt[ed]" to destroy plaintiff's mail while collecting it from the cell door.  *Id*. at 11.

Defendant Simmons "forcefully compelled [plaintiff] into [a cell] with the use of a black retention strap despite no resistance." *Id*.  Defendant Dishaw denied plaintiff a meal on June 27, 2013.  *Id*. at 12.

On July 3, 2013, plaintiff was harassed about his pending lawsuits by defendant

---

[2]  Plaintiff's complaint indicates that he saw defendants Ward and Lordi on December 12, 2012, but given the context of the complaint, it appears that plaintiff meant to say December 12, 2013.  Compl. at 7.

Deputy of Security ("DSS") Uhler. *Id*. at 11.

On June 28, 2013, during rounds, plaintiff told Special Housing Unit Director Bedar/Bezar, Sgt. Greenizen, and Captain Bishop about the threats to plaintiff's life. *Id*. at 11. On July 24, 2013, plaintiff verbally notified Captain Zerniak about Dishaw's threats. *Id*. at 11. On July 24, 2013, DSS Uhler verbally harassed plaintiff; superintendent Rock ignored the harassment. *Id*. at 11. Plaintiff was denied "intervention" by Greenizen on June 26, 2013, regarding conduct by Dishaw and Gokey. *Id*. at 12. On June 27, 2013, during rounds, Rock did nothing when plaintiff expressed concern that he might be transferred to "a life threatening facility" because he filed complaints. *Id*. at 12.

On June 26, 2013, defendant Morris walked up to plaintiff's cell and closed the window shade, making plaintiff fear that an attack by his cellmate was imminent. *Id*. at 12. Defendant Traynor denied plaintiff "all institutional rights" while presiding over plaintiff's Tier III hearing on June 24, 2013. *Id*. at 12. On June 13, 2013, correctional officers Southworth and Winston escorted plaintiff to the same cell where he was allegedly attacked by inmate Williams the previous day; Sergeant Oropallo "denied stopping the attack of Williams and allowed the officers to place plaintiff in that cell." *Id*. at 12.

Daniel Martuscello issued a letter on November 6, 2012, stating that "random video malfunctions [in the facility video system] 'may' arise." *Id*. at 13. The letter "served as a 'pass'" for correctional staff to claim that there were "video malfunctions" whenever plaintiff's rights were violated.[3] *Id*.

---

[3] Plaintiff also alleges that he was denied "sick call medical aid" on July 8, 2013; "harassed during mail call" on August 8, 2013; verbally harassed and threatened on June 17-19, 2013; and "denied all rights at a disciplinary hearing" on June 26, 2013. Compl. at 11-12. To the extent that these allegations could be read to state separate claims under the either the First, Eighth, or Fourteenth Amendment, plaintiff has not identified any defendants that were involved in these actions.

Construed liberally, plaintiff alleges the following claims:  (1) defendants Gokey, Menard, Dishaw, Pickering, Howard, Uhler, and Williams verbally harassed and/or threatened plaintiff; (2) Eighth Amendment excessive force claims against defendants Dishaw and Simmons; (3) Eighth Amendment medical deliberate indifference claims against defendants Dishaw, Lordi, and Ward; (4) Eighth Amendment failure-to-protect claims against defendants Hungerford, Southworth, Winston, and Oropollo; (5) First Amendment mail-interference claims against defendants Lipka and Dishaw; (6) a First Amendment retaliation claim against defendant Uhler; (7) a Fourteenth Amendment claim that defendant Traynor denied plaintiff due process at a disciplinary hearing; (8) an Eighth Amendment conditions-of-confinement claim against defendant Dishaw for denying plaintiff a meal; (9) a claim that defendants Bedar/Bezar, Greenizen, Bishop, Zerniak, and Rock failed to correct staff wrongdoing after receiving reports; and (10) claims against defendants Morris and Martuscello.  Plaintiff seeks monetary damages, as well as injunctive and declaratory relief. Compl. at 23-24.  For a more complete statement of plaintiff's claims, refer to the complaint.

### 1. Verbal Harassment and Threats

Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983.  *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

Plaintiff's claims that defendants Gokey, Menard, Dishaw, Pickering, Howard, Uhler, and Williams verbally harassed and/or threatened plaintiff are dismissed without prejudice pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Eighth Amendment Excessive Force

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under Section 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendant's conduct must be "'inconsistent with the contemporary standards of decency.'" *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9. "[T]he malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se [,]" regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). Although an inmate need not prove significant injury to make out an excessive force claim, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional

7

rights." *Wright v. Goord*, 554 F.3d 255, 269 (2d Cir. 2009) (internal quotation marks and citation omitted); *Sims*, 230 F.3d at 22 (not every push or shove violates an inmate's constitutional rights) (citation omitted).  The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id*. at 21 (citation omitted).  The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7).

### a. Defendant Dishaw

Construed liberally, plaintiff alleges that defendant Dishaw threatened plaintiff with injury or death, and then while plaintiff's face was pressed against his cell door, defendant Dishaw kicked the door with such force that plaintiff suffered serious injuries.  Compl. at 7-8. Afterwards, defendant Dishaw smiled, "blew kisses" to plaintiff, and threatened that "we're gonna kill your ass." *Id*. at 7.

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment excessive force claim against defendant Dishaw survives sua sponte review and requires a response.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### b. Defendant Simmons

Plaintiff alleges that defendant Simmons used a black retention strap to force plaintiff into a cell, even though plaintiff had offered no resistance.  Compl. at 10.  Here, plaintiff fails to meet the objective standard for stating an excessive force claim with respect to defendant

Simmons's action, and fails to state that he suffered any injury as a result of being forced into the cell in this manner.  While the extent of plaintiff's injuries is not determinative, conclusory allegations that some form of force was used are insufficient to state a constitutional claim. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987) (conclusory allegations are insufficient to state a claim for relief under section 1983).  Moreover, the action alleged is of the type that has been held to be *de minimis*.  *See Santiago v. C.O. Campisi Shield No. 4592*, 91 F. Supp. 2d 665, 674-75 (S.D.N.Y. 2000) (citing *inter alia Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) (bumping, grabbing, elbowing, and pushing plaintiff was *de minimis*); *Yearwood v. LoPiccolo*, No. 95 CIV. 2544, 1998 WL 474073, at *7 (S.D.N.Y. Aug 10, 1998) (choking plaintiff, hitting his head with a pair of keys, and punching him in the lip was de minimis)).

Plaintiff's Eighth Amendment excessive force claim against defendant Simmons is dismissed without prejudice pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Eighth Amendment Medical Indifference

The Eighth Amendment prohibits cruel and unusual punishment which encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citations and quotations omitted). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege

that the defendant was deliberately indifferent to a serious medical need. *See Farmer*, 511 U.S. at 825, 834. Deliberate indifference has two necessary components, one objective and the other subjective. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Objectively, the deprivation must be "sufficiently serious," creating a risk of "death, degeneration, or extreme pain." *Id*. Subjectively, the official must have the requisite state of mind, which is the "equivalent of criminal recklessness." *Id*.

The protections afforded by the Eighth Amendment do not extend to remedy harms which may be inflicted as a result of conduct amounting to negligence or medical malpractice but not encompassing conscious disregard of an inmate's health. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Additionally, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs*., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see also Estelle*, 429 U.S. at 107 (noting that medical decisions such as whether or not to order X-rays or other "diagnostic techniques" do not rise to the level of cruel and unusual punishment but are, at most, indicative of medical malpractice). "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id*.; *Graham v. Gibson,* No. 04-CV-6088, 2007 WL 3541613, at *5 (W.D.N.Y. Nov. 14, 2007) ("Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation."); *Jones v. Westchester County Dept. of Corrs. Med. Dept*., 557 F. Supp. 2d 408, 413

(S.D.N.Y. 2008) (The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'"). "Determinations made by medical providers within their discretion are given a 'presumption of correctness' when it concerns the care and safety of patients." *Mendoza v. McGinnis,* No. 9:05-CV-1124 (TJM/DEP), 2008 WL 4239760, at *11 (N.D.N.Y. Sept. 11, 2008).

### a. Defendant Dishaw

Plaintiff alleges that he was assaulted by defendant Dishaw on December 11, 2013, incurring injuries to his nose, skull, and mouth, including bleeding and swelling, and that he still suffers from those injuries. Compl. at 6-7. After the alleged assault, Dishaw "was smiling," told plaintiff that "we're gonna kill your ass," and "repeatedly blew kisses" at plaintiff. *Id*. at 7. Plaintiff asked defendant Dishaw to take him to the medical facility for treatment, but defendant Dishaw merely walked away. *Id*. Plaintiff did not see anyone from the medical department concerning his injuries until the next morning. *Id*. at 7-8.

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment medical indifference claim against defendant Dishaw survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### b. Defendants Ward and Lordi

Plaintiff alleges that on December 12, 3013, defendant Ward "attempted to examine" the injuries suffered by plaintiff from defendant Dishaw's alleged assault the previous day.

Compl. at 8.  Defendant Lordi "interrupted" her and told her "to move on to the next patient." *Id*.  Defendant Lordi had plaintiff fill out an injury report, but she failed to fill out the portion of the report to indicate how plaintiff had been injured.  *Id*.  Once plaintiff signed the report, defendant Lordi did not examine plaintiff's injuries, and did not provide plaintiff with any treatment.  *Id*.  Plaintiff continually called to Lordi and Ward for pain medication, but Lordi told Ward not to return to the cell, and "both proceeded on."  *Id*.

As to defendant Ward, plaintiff's allegations fail to plausibly suggest that she was deliberately indifferent to plaintiff's serious medical needs.  Indeed, plaintiff indicates that she tried to examine plaintiff but was replaced by defendant Lordi.  Therefore, plaintiff's Eighth Amendment claim that defendant Ward was deliberately indifferent to his serious medical needs is dismissed without prejudice pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment medical indifference claim against defendant Lordi survives sua sponte review and requires a response.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### 4. Eighth Amendment Failure-to-Protect

Prison officials are required to take reasonable measures to guarantee the safety of inmates and protect them from known harm.  *Farmer*, 511 U.S. at 832-33.  When evaluating a failure-to-protect claim, a court must determine whether the prisoner has demonstrated that (1) he or she was incarcerated under conditions posing a substantial risk of serious harm,

and that (2) prison officials exhibited deliberate indifference to the prisoner's situation.  *Id*. at 834; *see also Blaylock v. Borden*, 547 F. Supp. 2d 305, 310 (S.D.N.Y. 2008).  Deliberate indifference exists when the prison official "knows of and disregards an excessive risk to inmate safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  A prison official has sufficient intent if "he has knowledge that an inmate faces a substantial serious risk of serious harm and disregards that risk by failing to take reasonable measures to abate the harm."  *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996).  In addition, the alleged deprivation must be "sufficiently serious" such that it has denied the plaintiff of the "minimal civilized measure of life's necessities."  *Dawes v. Walker*, 239 F.3d 489, 493-94 (2d Cir. 2001) (internal quotations and citations omitted), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U .S. 506 (2002).

Construing the complaint liberally, plaintiff alleges that defendant Hungerford was present when defendants Gokey and Dishaw verbally harassed and threatened plaintiff but took no steps to stop the harassment.  Compl. at 3, 6.  Plaintiff does not allege facts to suggest that defendant Hungerford was aware that plaintiff faced a risk of serious harm stemming from the verbal threats and harassment.[4]  Plaintiff also alleges that defendants Southworth and Winston, with Oropallo's consent, placed him in the same cell where inmate Williams allegedly attacked him one day earlier.  *Id*. at 12.  Plaintiff appears to allege that defendant Oropallo denied that inmate Williams had attacked plaintiff.  *Id*. (alleging that "Sgt.

---

[4]  Indeed, the Court has previously concluded herein above that threats or harassment, without more, do not state a cognizable constitutional claim.  *See* Part II.C.1, *supra*.

13

Oropallo denied stopping the attack of Williams").  Plaintiff does not allege that was attacked or suffered any harm from inmate Williams after he was placed in the cell this second time.

Upon due consideration, the Court finds that plaintiff's complaint is not supported by factual allegations sufficient to plausibly suggest that he was incarcerated under conditions posing a substantial risk of harm, or that defendants Hungerford, Southworth, Winston, or Oropallo knew of and disregarded a risk of harm.  Thus, plaintiff's failure-to-protect claims against defendants Hungerford, Southworth, Winston, and Oropallo are dismissed without prejudice pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. First Amendment Mail-Interference

The First Amendment protects an inmate's right to send and receive both legal and nonlegal mail, although prison officials may regulate that right if the restrictions they employ are "'reasonably related to legitimate penological interests.'"  *Thornburgh v. Abbott,* 490 U.S. 401, 409 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); see *Johnson v. Goord,* 445 F.3d 532, 534 (2d Cir. 2006) (holding that prisoners do have a right – albeit a limited one – to send and receive mail (citation omitted).  Legal mail is entitled to greater protection from interference than nonlegal mail.  *See Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted).  A single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge.  *See Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975).  "Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'"  *Davis,* 320 F.3d at 351 (quoting *Cancel v. Goord*, No. 00 CIV 2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001) (citing *Washington v. James*, 782 F.2d 1134,1139 (2d Cir. 1986))).

14

Indeed, courts have consistently applied *Morgan* to dismiss suits by inmates alleging interference with their legal mail without any showing of damages.  *See Pacheo v. Comisse,* 897 F. Supp. 671, 681 (N.D.N.Y. 1995) (dismissing inmate's claim based on a single instance in which defendants allegedly opened his legal mail outside of his presence because "he has shown no prejudice as a result of the allegedly unauthorized opening"); *Walton v. Waldron,* 886 F. Supp. 981, 986 (N.D.N.Y. 1995) ("Existing precedent on an inmate's claim that his 'legal' mail has been improperly handled by prison officials requires a showing of harm."); *Gittens v. Sullivan,* 670 F. Supp. 119, 124 (S.D.N.Y. 1987), *aff'd,* 848 F.2d 389 (2d Cir. 1988) (holding that inmate's allegation that his legal mail was "interfered with on one occasion is insufficient to state a cause of action given that the interference complained of did not affect plaintiff's access to the courts"); *Pickett v. Schaefer,* 503 F. Supp. 27, 28 (S.D.N.Y. 1980) ("Without explicit proof of damages, an inadvertent violation of prisoner's mail rights does not state a claim cognizable under 42 U.S.C. § 1983.").

Here, plaintiff alleges that defendant Lipka threw away plaintiff's outgoing mail on one occasion, and that defendant Dishaw *attempted* to destroy plaintiff's outgoing mail on another day.[5]  Even accepting as true all of the allegations in plaintiff's complaint and drawing all inferences in plaintiff's favor, plaintiff has alleged only a single instance of mail interference by each defendant, and there is nothing to plausibly suggest that this single instance caused plaintiff to suffer a constitutionally significant injury.

Plaintiff's First Amendment mail-interference claims against defendants Lipka and Dishaw are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

---

[5]  Plaintiff does not identify the mail as legal mail, only as outgoing mail.

### 6. First Amendment Retaliation

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis*, 320 F.3d at 352 (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Plaintiff alleges that defendant Uhler harassed him because of his pending lawsuits. Compl. at 11. The filing of a lawsuit is a constitutionally protected activity. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (citing *Bounds v. Smith,* 430 U.S. 817, 821-32 (1977); *Amaker v. Goord,* No. 98 Civ. 3634, 2002 WL 523371, at *14 (S.D.N.Y. Mar. 29, 2002)).

To meet the second prong of the retaliation test, plaintiff must allege that defendant Uhler took adverse action against him because he filed lawsuits. The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citation omitted) (omission in original). This objective test

16

applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.* Conduct that is de minimis does not give rise to actionable retaliation. What is de minimis varies according to context. *Dawes*, 239 F.3d at 493. As the Second Circuit has pointed out, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Dawes,* 239 F.3d at 491 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (per curiam)). If a retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes,* 239 F.3d at 493.

Verbal harassment, or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim. *See Cabassa v. Smith*, No. 9:08-CV-0480 (LEK/DEP), 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009) ("Courts addressing claims of verbal threats and harassment advanced to support First Amendment retaliation claims have uniformly held that such conduct is not sufficiently serious to meet this standard") (collecting cases); *Battice v. Phillip*, No. CV-04-0669, 2006 WL 2190565, at *7 (E.D.N.Y. Aug. 2, 2006) ("The Second Circuit has held that '[i]nsulting or disrespectful comments directed at an inmate' generally do not rise to the level of conduct that would deter an individual from exercising his or her constitutional rights.") (quoting *Davis*, 320 F.3d at 353).

Plaintiff's First Amendment retaliation claim against defendant Uhler is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

17

### 7. Fourteenth Amendment Due Process

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483-84; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658. To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998).

While not the only factor to be considered, the duration of a disciplinary confinement

18

remains significant under *Sandin*.[6]  *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).

Specifically, while under certain circumstances confinement of less than 101 days could be

shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the

Second Circuit generally takes the position that disciplinary confinement, without unusual

conditions, for a period of up to 101 days will generally not constitute an atypical hardship,

while confinement for a period of more than 305 days has been held to be atypical even if

under "normal conditions."  *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

Here, plaintiff only alleges that defendant Traynor "conducted a tier III hearing and

denied [plaintiff] all institutional rights governing disciplinary hearings [and] as a result

[plaintiff] was made to appeal the decision."  Compl. at 12.  Plaintiff does not indicate what

process he was deprived of, or what sentence was imposed by defendant Traynor.  Nor does

plaintiff include facts to plausibly suggest the he was subjected to an atypical and significant

hardship as a result of defendant's actions.  Thus, the complaint is completely devoid of any

facts plausibly suggesting that plaintiff was deprived of a liberty interest or denied due

process.

As a result, plaintiff's Fourteenth Amendment due process claim against defendant

Traynor is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C.

§ 1915A(b) for failure to state a claim upon which relief may be granted.

### 8.  Eighth Amendment Conditions-of-Confinement

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual

---

[6]  For example, segregation for thirty days was found by the Supreme Court not to impose a significant hardship on an inmate.  *Sandin*, 515 U.S. at 485-86.  In explaining its reasoning, the Court found that the disciplinary confinement failed to present "a dramatic departure from the basic conditions" of an inmate's normal sentence.  *Id.*

punishment." U.S. Const. amend. VIII. The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled only to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). As to food, prisons are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curium) (citation and internal quotation marks omitted).

To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir.1985); *see also Jolly*, 76 F.3d at 480, and (2) that the defendants acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).

In this case, plaintiff alleges that defendant Dishaw denied him one meal. Compl. at 12. However, the scope of the deprivation of food required to constitute cruel and unusual punishment is significantly greater than the deprivation present here. *See*, *e.g., Butler v. Hogue*, No. 9:08-CV-0264 (GLS/DRH), 2010 WL 4025886, at *3 (N.D.N.Y. Oct. 13, 2010) (finding that deprivation of only two meals over a two-day period was insufficient to make out a constitutional claim); *see also Rhodes v. Chapman*, 452 U.S. 337, 347(1981) (Routine discomfort and restrictive or even harsh prison conditions "are part of the penalty that

20

criminal offenders pay for their offenses against society.").  Plaintiff's allegations also do not

plausibly suggest that defendant Dishaw acted with the requisite deliberate indifference.

Plaintiff's Eighth Amendment conditions-of-confinement claim against defendant

Dishaw is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. §

1915A(b) for failure to state a claim upon which relief may be granted.

### 9. Supervisory Claims

To state a viable claim under Section 1983, a plaintiff must allege that the defendant,

while acting under color of state law, deprived him of a right, privilege or immunity secured by

the Constitution or by the laws of the United States.  *See* 42 U.S.C. § 1983.  Personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award

of damages under section 1983.  *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing

*Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,*

568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978)).  In order to prevail on

a Section 1983 cause of action against an individual, a plaintiff must show some tangible

connection between the constitutional violation alleged and that particular defendant.  *See*

*Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Any complaint that fails to allege

personal involvement is "fatally defective on its face."  *Alfaro Motors, Inc. v. Ward,* 814 F.2d

883, 886 (2d Cir.1987) (internal quotations and citations omitted).

A supervisor cannot be liable for damages under Section 1983 solely by virtue of

being a supervisor; there is no respondeat superior liability under section 1983.  *Richardson*

*v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  Vague and conclusory

allegations that a supervisor has failed to train or properly monitor the actions of subordinate

employees will not suffice to establish the requisite personal involvement and support a

finding of liability. *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . . [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual (1) has directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, has failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986).[7]

Construed liberally, plaintiff alleges that he told defendants Bedar/Bezar, Greenizen, Bishop, Zerniak, and Rock about his being harassed and threatened by staff at Upstate C.F. but they did nothing to correct the alleged wrongdoing. Compl. at 11-12. However, "conclusory allegations or legal conclusions masquerading as factual conclusions" are insufficient to allege involvement of a supervisor. *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted). Additionally, since the Court has already determined that verbal harassment and threats do not violate plaintiff's

---

[7] Whether all five *Colon* factors for supervisor liability remain available in light of the Supreme Court's decision in *Iqbal*, 556 U.S. 662, has been debated by the district courts in this circuit. *See, e.g., Pearce v. Estate of Longo*, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), *rev'd in part on other grounds sub nom., Pearce v. Labella*, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated *Iqbal*'s impact on the five *Colon* factors); *Kleehammer v. Monroe Cnty.*, 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal*'s muster . . . ."); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that *Iqbal* eliminated *Colon*'s personal involvement standard). Regardless of whether *Colon* or an *Iqbal*-limited standard applies, plaintiff has failed to allege the personal involvement of defendants  Bedar/Bezar, Greenizen, Bishop, Zerniak, or Rock in any wrongdoing.

constitutional rights, there is no unconstitutional conduct for which these supervisors can be held responsible. *See Toole v. Connell*, No. 9:04-CV-0724 (LEK/DEP), 2008 WL 4186334, at *1, 7 (N.D.N.Y. Sep. 10, 2008) (supervisory defendant cannot be liable for failing to investigate or correct conduct that has already been found to be not actionable under section 1983); *see also Linares v. Mahunik,* No. 9:05-CV-0625, 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006) (Sharpe, D.J. and Treece, M.J.) (holding plaintiff could not "sustain a supervisory liability claim as there was no wrong for [supervisor-defendant] to remedy since there [was] no constitutional violation").[8]

Plaintiff's supervisory claims against defendants Bedar/Bezar, Greenizen, Bishop, Zerniak, and Rock are dismissed without pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 10.  Claims Against Defendants Morris and Martuscello

Plaintiff alleges that defendant Morris pulled down the shade on plaintiff's cell, which made plaintiff fear that his cellmate was going to assault him.  Compl. at 12.  Plaintiff alleges that defendant Martuscello issued a letter which noted that the video system at Upstate C.F. occasionally malfunctioned.  *Id*. at 13; *see also* Dkt. No. 1-1 at 51.  Plaintiff claims that this letter gives correctional officers permission to claim that the video system malfunctioned whenever plaintiff alleges wrongdoing by staff.  Compl. at 13.  These allegations against defendants Morris and Martuscello, even accepted as true, do not state any cognizable

---

[8]  Plaintiff also alleges that he notified Pickering about Rock's failure to correct Uhler's harassment and about being denied one meal by defendant Dishaw, and Pickering "made mental and hand-written notes on the matter." Compl. at 12.  It does not appear, however, that Pickering supervises either of these defendants, and indeed, it seems apparent that he does not supervise defendant Superintendent Rock.  Even if he could be shown to be a supervisor, these claims against him would nevertheless fail because the underlying conduct by Rock and Dishaw has been found to not rise to the level of a constitutional violation.  *See* Part II.C.1 and 8; *see also Toole*, 2008 WL 4186334, at * 7; *Linares*, 2006 WL 2595200, at *11.

constitutional claim.

Accordingly, plaintiff's claims against defendants Morris and Martuscello are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## III.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**.[9]  The Clerk shall provide the Superintendent of the facility that plaintiff has designated as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** for the reasons set forth above:  (1) the claims that defendants Gokey, Menard, Dishaw, Pickering, Howard, Uhler, and Williams verbally harassed and/or threatened plaintiff; (2) the Eighth Amendment excessive force claim against defendant Simmons; (3) the Eighth Amendment medical indifference claim against defendant Ward; (4) the Eighth Amendment failure-to-protect claims against defendants Hungerford, Southworth, Winston, and Oropollo; (5) the First Amendment mail-interference claims against defendants Lipka and Dishaw; (6) the First Amendment retaliation claim against defendant Uhler; (7) the Fourteenth Amendment claim

---

[9]  Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

that defendant Traynor denied plaintiff due process at a disciplinary hearing; (8) the Eighth

Amendment conditions-of-confinement claim against defendant Dishaw for denying plaintiff a

meal; (9) the claims that defendants Bedar/Bezar, Greenizen, Bishop, Zerniak, and Rock

failed to correct staff wrongdoing after receiving reports; and (10) all claims against

defendants Morris and Martuscello;[10] and it is further

     **ORDERED** that defendants Gokey, Menard, Pickering, Howard, Uhler, Williams,

Simmons, Ward, Hungerford, Southworth, Winston, Oropollo, Lipka, Traynor, Bedar/Bezar,

Greenizen, Bishop, Zerniak, Rock, Morris, and Martuscello are **DISMISSED without**

**prejudice**; and it is further

     **ORDERED** that the Clerk shall issue summonses and forward them, along with copies

of the complaint, to the United States Marshal for service upon defendants Dishaw and Lordi.

The Clerk shall also forward a copy of the summons and complaint by mail to the Office of

the New York State Attorney General, together with a copy of this Decision and Order; and it

is further

     **ORDERED** that a response to the remaining allegations in the complaint be filed by

defendants Dishaw and Lordi, or their counsel, as provided for in the Federal Rules of Civil

Procedure;[11] and it is further

     **ORDERED** that all pleadings, motions and other documents relating to this action be

---

[10] Should plaintiff seek to pursue any claims that were dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

[11] Specifically, the Court requires a responsive pleading from (1) defendant Dishaw with respect to plaintiff's Eighth Amendment excessive force claim; and (2) defendants Dishaw and Lordi with respect to plaintiff's Eighth Amendment medical indifference claims.

filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; plaintiff's failure to do so will result in the dismissal of this action**; and it is further

ORDERED, that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated:  April 14, 2014
      Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court