**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOHN H. WHITE,

                              Plaintiff,

      - v -                                           Civ. No. 9:14-CV-0002
                                                                 (GLS/DJS)

JOEY DISHAW,

                              Defendant.

**APPEARANCES:**                                    **OF COUNSEL:**

JOHN H. WHITE
Plaintiff, *Pro Se*
08-A-3366
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

HON. ERIC T. SCHNEIDERMAN                BRIAN W. MATULA, ESQ.
Attorney General of the State of New York      Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

On December 27, 2013, *pro se* Plaintiff John White commenced this civil rights action, pursuant to 42 U.S.C. § 1983, asserting numerous claims arising from his confinement at Upstate Correctional Facility ("Upstate") in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1, Compl. Plaintiff's sole remaining claim is an Eighth Amendment excessive force claim against Defendant Correctional Officer ("C.O.") Joey Dishaw based upon an incident that allegedly occurred on December 11, 2013. *See* Dkt. Nos. 5 & 83.

Presently before the Court is Defendant's Motion for Summary Judgment, Dkt. No. 196, Def.'s Mot. Summ. J., to which Plaintiff has responded, Dkt. No. 210, Pl.'s Resp. Defendant argues that: (1) Plaintiff has failed to exhaust his administrative remedies; and (2) Plaintiff cannot establish that Dishaw caused him any injury. Dkt. No. 196-3, Def.'s Mem. of Law. The Court finds that the Defendant has established that Plaintiff has failed to exhaust his administrative remedies and therefore recommends that Defendant's Motion be **granted**.

## I. LEGAL STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v.*

*Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. EXHAUSTION

### A. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id*. at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).[1]

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). In addition, an inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id*. at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id*. at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner

---

[1] Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Defendant properly raised the affirmative defense in their Answer. Dkt. No. 40 at ¶ 12.

seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

### B. Plaintiff's Failure to Exhaust Administrative Remedies

In this case, Plaintiff admits that he did not exhaust his administrative remedies relative to the excessive force incident. *See* Dkt. No. 196-4, Affirm. of Brian Matula, Esq., dated Feb. 28, 2017, Ex. F, Dep. of John White, dated Jan. 10, 2017 ("Pl.'s Dep.") at pp. 45-48. As stated by Plaintiff, the following series of events occurred subsequent to the alleged excessive force incident on December 11, 2013. First, Plaintiff asserts that, on December 13, 2013, he sent a letter to Superintendent Racette, which referred to the assault by Defendant Dishaw. *Id.* at pp. 32 & 37. Then, on December 18, 2013, Plaintiff claims that he filed a grievance complaining about the incident with the IGRC. *Id.* at pp. 28-29. This grievance, however, was returned to Plaintiff through regular mail distribution, without having been filed. *Id.* at pp. 31-32.

Plaintiff additionally refers to a letter, addressed to him from Superintendent Racette, dated December 20, 2013, that advised him to submit any grievances to the IGP office. *Id.* at pp. 44-45. In that letter, Superintendent Racette states that he is "returning your complaint so that you may address your issues *directly to the IGP office*."[2] Matula Affirm., Ex. B. Notwithstanding that letter, Plaintiff claims that he then had a conversation with Superintendent Racette and Captain Zerniak during from which he understood that it "would not be beneficial" to continue pursuing his grievance. Pl.'s Dep. at p. 38. According to Plaintiff, Superintendent Racette told him the IGP would be "of no use" and Captain Zerniak told him to "leave it alone" because Plaintiff had filed

---

[2] It is unclear if the complaint referred to in the letter is the letter Plaintiff claims he sent Superintendent Racette on December 13, 2013, or the grievance that he allegedly attempted to file on December 18, 2013.

grievances requesting similar relief—a transfer out of the facility—in the past. *Id.* at pp. 45 & 48. Based upon this conversation and prior experience, Plaintiff determined that it would not be productive for him to pursue his remedies through the IGP. *Id.* at p. 48. Accordingly, Plaintiff drafted his Complaint, which was filed with this Court on December 27, 2013. Compl.

Thus, Plaintiff's testimony establishes that he did not exhaust his administrative remedies. The mere fact that senior prison officials were aware of the nature of Plaintiff's complaint is insufficient to constitute "proper exhaustion." *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) ("Alerting the prison officials as to the nature of the wrong for which redress is sought, does not constitute 'proper exhaustion.'" (citation omitted)). The Court will discuss below whether Plaintiff's failure to exhaust his administrative remedies may be excused.

### C. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court recently stated, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court stated three potential circumstances where administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.[3]

---

[3] The Second Circuit previously set forth a three-part inquiry for when a failure to exhaust may be excused: "(1) administrative remedies are not available to the prisoner; (2) defendants have either wived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a
(continued...)

At the time of the relevant events of this action, Upstate had a grievance program, through which Plaintiff had filed multiple grievances. Pl.'s Dep. at pp. 16-17. In his opposition papers, Plaintiff makes a number of arguments that this program was unavailable to him on this occasion. None of his arguments, however, are sufficient to raise an issue of material fact as to the availability of administrative remedies that would excuse his failure to exhaust.

Plaintiff first argues that he feared possible retaliation based upon Captain Zerniak's comments to him and his previous experience with the IGP. *See* Pl.'s Resp. at ¶¶ 11 & 13. Plaintiff contends that Captain Zerniak's explanation that he would not receive a transfer out of the facility or separation from staff was an "implied threat." Pl.'s Dep. at pp. 45-46. Plaintiff states that he understood that his grievance would be an "annoyance" in light of his previous grievance filing which had "inflamed the passions of staff." *Id.* Under *Ross*, threats or other intimidation by prison employees may render administrative remedies unavailable. 2016 WL 3128839, at *8 n.3. Plaintiff's claims, however, amount to nothing more than a "generalized fear of retaliation," which is insufficient to excuse a failure to exhaust. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) ("[P]laintiff's mere allegation of a generalized fear of retaliation is insufficient to excuse his failure to file a grievance."); *see also Rodriguez v. Cty. of Suffolk*, 2014 WL 3531897, at *5 (E.D.N.Y. June 30, 2014) ("Courts tend to find mere 'generalized fear' when no actual threat was made."). As the Second Circuit has stated, "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated

---

³(...continued)
reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The Second Circuit has stated that "*Ross* largely supplants our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).

individual of ordinary firmness' have deemed them available." *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). Plaintiff's prior experience filing grievances is not a well-founded basis for him to fear retaliation from filing a grievance relative to the present incident. Nor does Captain Zerniak's explanation that Plaintiff would not be transferred out of the facility, *see* Pl.'s Dep. at p. 39, constitute a threat that would deter a similarly situated inmate of "ordinary firmness" from pursuing a grievance.

Plaintiff next argues that he reasonably believed that it would be futile to pursue his grievance because of his conversation with Superintendent Racette. However, "[p]risoners are required to exhaust their administrative remedies 'even if they believe that administrative remedies would be ineffective or futile.'" *Harrison v. Goord*, 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009); *see also Woodford v. Ngo*, 548 U.S. at 89-90 (stating that "exhaustion requirements are designed to deal with parties who do not want to exhaust," including those who "conclude—correctly or incorrectly—that exhaustion is not efficient in that party's particular case."). Here, it is clear that Plaintiff determined that it would not be efficacious to pursue administrative remedies based upon his conversation with Superintendent Racette, which is insufficient to excuse his failure to exhaust.[4]

Finally, Plaintiff argues that the matter was resolved through informal channels when he was transferred to a different unit. *See* Pl.'s Resp. at ¶¶ 21 & 23. However, a prisoner does not exhaust "his administrative remedies every time he receives his desired relief through informal channels."

---

[4] A different situation would be presented if Superintendent Racette had misled Plaintiff about the availability of administrative remedies. *Williams v. Suffolk Cty.*, 2012 WL 6727160, at *5 (E.D.N.Y. Dec. 28, 2012) ("[I]t is clear that 'an administrative remedy is not available, and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it. (quoting *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011)).

*Ruggiero v. Cty. of Orange*, 467 F.3d 170, 177 (2d Cir. 2006) (finding that exhaustion was still required where prisoner had been transferred to a different facility away from the officers who allegedly assaulted him). "Regardless of whether . . . informal complaints put the prison officials on notice of his grievance '*in a substantive sense*,'. . . to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies." *Macias v. Zenk*, 495 F.3d at 43.

Accordingly, for the foregoing reasons, the Court finds that Plaintiff has not established an issue of material fact as to the availability of administrative remedies. The Court therefore recommends that the Defendant's Motion be **granted** based upon Plaintiff's failure to exhaust.[5]

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 196) be **GRANTED** and this action **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[6] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

---

[5] Because the Court recommends that Defendant's Motion be granted based upon Plaintiff's failure to exhaust his administrative remedies, it does not reach Defendant's argument in the alternative on the merits of Plaintiff's excessive force claim.

[6] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: June 20, 2017
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge